### HILL v. KICKAPOO LUMBER CO. et al. (No. 2895.)

(Court of Civil Appeals of Texas. Texarkana. March 26, 1924. Rehearing Denied April 10, 1924.)

Sales ☞416(2)—Refusal of evidence as to market value of lumber delivered of grade below that contracted for held reversible error.

Where contract for sale of lumber provided that lumber of grade of No. 2 or better only was to be shipped, and that it was to be graded by millman before final settlement, his grades to be final, and there was evidence affirmatively showing that lumber of grade below No. 2, as decided by millman, was shipped, it was reversible error to exclude evidence of market value of lumber of grade No. 3, to show difference in value between No. 3 and No. 2, as grounds for damages sued for.

Appeal from Grimes County Court; R. M. West, Judge.

Action by J. C. Hill against the Kickapoo Lumber Company and others. Judgment for defendants, and plaintiff appeals. Reversed and remanded for new trial.

Pat N. Fahey, of Houston, for appellant. Buffington & Leigh, of Anderson, for appellees.

LEVY, J. The suit was by the appellant for loss and damages, and, in the alternative, to recover back overpayment of sale price, for breach of a contract of purchase and sale of lumber of the grade of No. 2 or better, claiming the deliveries made contained a large percentage of lumber of No. 3 grade. The appellees answered by general denial, and by cross-action sought to recover the sum of $333.80, with interest thereon, as the balance due and unpaid on the lumber delivered, claiming that all the lumber sold and delivered was in compliance with the agreement of sale.

There was a trial before the court without a jury, and judgment was rendered against the appellant, and for the appellees on their cross-action for the sum sued for.

In the trial the appellant offered to testify and to prove by Victor Bass the market value of lumber of the grade of No. 3, in order to show the difference in value between No. 3 and No. 2 lumber, as grounds for the damages sued for. The court sustained the appellees' objection to the evidence. This evidence was material and legally essential in the trial, in view of the contract and evidence respecting it between the parties. The evidence fully establishes that the parties made a complete oral agreement of purchase and sale of the lumber. Subsequent to the oral agreement an order directing shipment was sent by appellant, reciting only the dimensions of the lumber, grade, and price, and to whom it was to be shipped, and appellee signed the same. The order did not purport to, and it was not intended that it should, contain all the terms of the agreement. It was drawn and signed for the purpose and intention of verifying the subject-matter recited therein. The contract, then, would legally be classed as one partly oral and partly evidenced by a subsequent memorandum in writing. The evidence shows that prior to and at the date of the agreement the appellee had stacked separately on its mill yard rough lumber of the dimensions and sizes stated in the written memorandum, mutually estimated to be nine carloads. Lumber of the grade of "No. 2 or better" only was purchased and sold. The testimony of Mr. J. A. Greenwood, manager of the appellee's lumber yard, and who made the contract with Mr. Bueute, authorized agent of the appellant, shows:

"We figured how much lumber was in the stacks so as to tell how much it would take to

make a car. It was the understanding that we were to take out the No. 3 lumber. We discussed the price. Mr. Bueute said that our deal was that the lumber was to be shipped to the Conroe Lumber Company to be dressed, checked, and graded. The lumber was to be shipped to the Conroe Lumber Company for milling in transit. On receipt of the invoices J. C. Hill was to forward us 85 per cent. of the price and on receipt of the mill's check and grade they were to make final settlement. They made final settlement on the check and grade of the millman, on all cars with the exception of three cars. * * * My grades was not to be final. The millman's was to be final under our deal."

Accordingly, by the express terms of the agreement, as stated by the witness, the lumber "was to be shipped" by the seller "to the Conroe Lumber Company for milling in transit," "to be dressed, checked and graded.". The seller's "grades were to be final," and the "millman's" grading of the shipment, and not the buyers' "was to be final under our deal." The witness further testified, "The same character of agreement applied at Center as it did at Conroe." Agreeing, then, as the parties did, that only lumber of the grade of "No. 2 or better" was to be "shipped," and that it would "be checked and graded" by the "millman" at Conroe or Center before "final settlement" of the purchase price was made, each, appellant and appellee, would be bound by the contractual terms of such agreement. The grading made by the millman would be "final," as agreed. This express provision of agreement as to finalty of "the grade" of lumber "shipped" by appellees would obtain and prevail, irrespective of whether the sale at the mill yard was outright, or whether the sale was to be consummated by delivery by appellees at Conroe or Center before the title passed. In either event, if the appellees in performing the terms of the contract shipped lumber containing any below the grade of "No. 2 or better," as finally determined by the millman at Conroe or Center, the appellant would be entitled to reject or make claim for the difference in value. The claim of appellant, as well as that of appellee, would be based upon and limited by the grade determined by the millman, as agreed should be done. And in this record there is evidence affirmatively showing that lumber of a grade below No. 2, as decided by the millman, was shipped by appellees. The evidence by appellee's manager that only No. 2 grade was ever shipped out would not prevail. For "my grades was not to be final," as the manager testified. The witness Goodwin testified:

"At Center we dressed and graded cars 78312 and 35540 in May, 1920. I personally inspected these cars, regrading them. Car No. 78312 contained 18138 feet of No. 2, 1x12, also 3,180 feet of No. 3, 1x12. Car No. 35540 contained 15142 (feet) of No. 2, 1x6."

There is further evidence going to show that car No. 35540 contained 2,370 feet of No. 3. These two cars, besides another, are the ones here in controversy. Hence it is apparent that the evidence rejected was material in order to determine the amount of appellant's recovery, at least as offset to appellees' cross-demand.

The judgment will be reversed for the error stated, and the cause remanded for another trial.